USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/4/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY LAURIA,

                          Petitioner,

  -against-

UNITED STATES OF AMERICA,

                          Respondent.

19 Cr. 449 (NSR)
23 Civ. 9544 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

      Petitioner Anthony Lauria (the "Petitioner" or "Lauria"), commenced this action on October 30, 2023, seeking to vacate, set aside, or correct his sentence following his conviction for Hobbs Act Robbery, conspiracy to commit Hobbs Act robbery, and brandishing a firearm in the course of committing Hobbs Act robbery. (ECF No. 249.) On November 29, 2023, the Court granted Petitioner legal counsel to help prepare an amended 28 U.S.C. § 2255 petition (the "Petition"). (ECF No. 261.) On April 15, 2024, Lauria filed his Petition with the assistance of legal counsel. (ECF No. 285.) In his Petition, Lauria asserts that: (1) his petition was timely filed under 28 U.S.C. § 2255(f)(4); (2) proof of Lauria's actual innocence is sufficient to toll the time limitations of the Antiterrorism and Effective Death Penalty Act ("AEDPA"); (3) Lauria's legal counsel was ineffective for failure to (a) research the relevant case law, (b) provide competent legal advice during plea bargaining, and (c) provide competent advice on whether to appeal. For the following reasons, Lauria's Petition is DENIED.

## BACKGROUND

      Lauria, along with two other co-conspirators, were charged with two counts of Hobbs Act robbery conspiracy, in violation of 18 U.S.C. § 1951; two counts of substantive Hobbs Act

robbery, in violation of 18 U.S.C. § 1951 and 2; and two counts of using a firearm that was brandished during the course of the robbery, and aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2. Lauria was charged for his part in the robberies of two Verizon stores—one located in New Milford, Connecticut and the other in Mahopac, New York. Lauria and his co-conspirators maintained that the firearms used during the robberies were not actual firearms but a pellet gun. Lauria also maintains that his attorney, Sam Braverman, was made aware of this fact from the beginning of their attorney-client relationship.

On June 4, 2021, Lauria pled guilty to the two Hobbs Act conspiracy charges and the two substantive Hobbs Act robbery charges. At his plea allocution, Lauria stated that he intended to go to trial on the 18 U.S.C. § 924(c) charges. Lauria further stated during his allocution that the firearm used during the robberies was a pellet gun and that he intended to prove so at trial. One of Lauria's co-defendants intended to do the same. At Lauria's co-defendant's trial, he introduced evidence that the weapon was not real, including that one of the employees at the Verizon store initially believed that the gun was a pellet gun and that another said that the gun sounded plastic.

At the conclusion of Lauria's co-defendant's trial, the Court instructed the jury that:

> a firearm under the statute means any weapon, which will or is designed to or may readily be converted to expel a projectile by the action of an explosive. In considering this specific element of which the defendant used or carried or possessed a firearm, it does not matter whether the firearm was loaded or operable at the time of the crime. Operability is not relevant to your determination of whether a weapon qualifies as a firearm. I instruct you that a gun is a firearm.

On June 23, 2021, the jury returned a verdict of guilty against Lauria's co-defendant on all six charges. Following this jury verdict, on December 7, 2021, Lauria entered a plea of guilty to the firearms charges before this Court. Lauria alleges that his counsel, Mr. Braverman, told him that if he went to trial, as his co-defendant did, that he would likely receive the same jury instructions and encouraged him to take the plea deal offered to him. Shortly after Petitioner's guilty plea, Lauria's co-defendant filed an appeal to the Second Circuit Court of Appeals challenging, *inter alia*, the Court's jury instructions related to the firearm. On June 9, 2023, the Second Circuit issued its decision in *United States v. Lauria*, 70 F.4th 106 (2d Cir. 2023) and vacated Lauria's co-defendant's convictions and remanded the case for further proceedings. One of the grounds for vacatur and remand was the Court's jury instructions related to the firearm and that the Court had erred in instructing the jury that a gun is a firearm. The Second Circuit cited to its opinion in *United States v. Rosa* as precedent that "not all guns are firearms—BB guns, staple guns, for example, are not." 507 F.3d 142, 145 n.1 (2d Cir. 2007).

Lauria now brings this Petition alleging that he received ineffective assistance of counsel because his attorney did not research the prevailing law in the Second Circuit that established that not all guns are firearms. Moreover, Lauria also claims that his counsel was ineffective by encouraging him to plead guilty by misadvising him on the law and pressuring him to take the plea deal. And finally, Lauria claims that his counsel was ineffective for not filing his notice of appeal and for advising him that he had no basis to do so.

## PROCEDURAL HISTORY

On October 30, 2023, Lauria filed a motion seeking to vacate, set aside, or correct his sentence following his conviction for Hobbs Act robbery, conspiracy to commit Hobbs Act robbery, and brandishing a firearm in the course of committing Hobbs Act robbery. (ECF No. 249.) On November 29, 2023, the court granted petitioner legal counsel to help prepare an amended 28 U.S.C. § 2255 petition (the "Petition"). (ECF No. 261.) On April 15, 2024, Lauria filed this Petition with the assistance of counsel along with a Declaration (the "Lauria Declaration") containing exhibits related to his Petition. (ECF Nos. 285, 286.) On December 30, 2024, the Government filed its Opposition to Lauria's Petition (the "Opp."). (ECF No. 318.) On the same day, Lauria's counsel, Mr. Braverman, filed his Declaration containing exhibits related to the Government's Opp (the "Braverman Declaration"). (ECF No. 319.) On January 29, 2025, Lauria filed his Reply (the "Reply"). (ECF No. 320.)

## LEGAL STANDARD

A motion under 28 U.S.C. § 2255 is "an extraordinary remedy." *Moyhernandez v. United States*, No. 02 Civ. 8062 MBM, 2004 WL 3035479, at *1 (S.D.N.Y. Dec. 29, 2004). 28 U.S.C. § 2255(a) provides that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

§ 2255(b) provides, in relevant part:

If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

"A plain reading of the statute contemplates providing a mechanism to detained individuals who seek judicial relief from a wrongfully imposed sentence. It is well settled that § 2255 provides a collateral remedy and not a remedy for an appeal such that it can used to challenge the sufficiency of the evidence." *United States v. Graham*, No. 14-CR-500 (NSR), 2018 WL 798742, at *1 (S.D.N.Y. Feb. 7, 2018) (citing *Dansby v. United States*, 291 F. Supp. 790 (S.D.N.Y. 1968); *Bousley v. United States*, 523 U.S. 614, 621 (1998)).

## DISCUSSION

### A. Timeliness Under § 2255(f)(4)

Lauria argues that his Petition was timely filed under 28 U.S.C. § 2255(f)(4), which states that a § 2255 motion must be filed within one year of "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). Lauria asserts that his co-defendant's appeal created a new "fact" in that he learned from the Second Circuit's decision that: (1) a pellet gun was not a firearm; (2) he was actually and factually innocent of the firearms charges; and (3) his attorney's advice to plead

5

guilty was based on a misunderstanding of the law. Lauria argues that court rulings can be facts for purposes of a § 2255(f)(4) motion. In doing so, Lauria relies on *Johnson v. United States* as support. 544 U.S. 295 (2005). There, the Supreme Court held that state vacatur of a petitioner's prior conviction was a "fact" for purposes of a § 2255(f)(4) motion. From that, Petitioner argues that court rulings, such as the Second Circuit's decision in *Lauria*, created a new fact that renders his Petition timely. This Court disagrees.

 First, Petitioner's reliance on *Johnson* is misguided. The Supreme Court's decision in *Johnson* was narrowly cabined to only address state vacatur of a petitioner's prior conviction. The question presented was "[w]hen a federal court bases an enhanced sentence on a vacated state conviction, is the vacatur of the state conviction a 'fact' supporting a prisoner's 28 U.S.C. § 2255 claim requiring reduction of the prisoner's sentence?" *Johnson*, 544 U.S. at 312. It did not extend to cases such as here where an appellate decision illuminated an already settled area of law for a petitioner. Moreover, the Supreme Court rendered its decision in *Johnson* because state vacatur of a petitioner's prior conviction was a necessary condition of the § 2255 motion and this element was subject to proof or disproof like other factual issues. Those circumstances are not present here.

 Second, Lauria's argument that a development in case law constitutes a newly discovered fact within the meaning of § 2255(f)(4) has already been foreclosed in this circuit. In *McCloud v. United States*, the Second Circuit held that "a development in case law . . . does not give rise to a 'fact[ ] supporting the claim' brought by a petitioner within the meaning of § 2255(f)(4)." 987 F.3d 261, 264 (2d Cir. 2021). The court explained "[i]f a case interpreting the law were to be considered a newly discovered 'fact,' it would have been superfluous for Congress to create a separate subsection of § 2255 to allow certain intervening Supreme Court decisions to trigger a

new limitations period; any claim that could be brought under § 2255(f)(3) could also be brought under § 2255(f)(4) without the conditions specified in that former section." *Id*. The Second Circuit's decision in *Lauria* cannot, therefore, be considered a newly discovered fact for purposes of § 2255(f)(4) as Petitioner suggests.

      Third, Petitioner's assertion that after the Second Circuit's decision in *Lauria*, he newly learned that a plastic gun was not a real gun is difficult to credit. As the Braverman Declaration makes clear, the issue of the plastic gun was discussed several times. The strategy of using the plastic gun as an affirmative defense was discussed not only with Lauria but also his co-defendants and their attorneys. Moreover, Lauria's co-defendant attempted to use this strategy at trial and elicited testimony about how the gun could have been plastic from certain witnesses. The concern of Mr. Braverman, which was communicated to Lauria, was that there would be proof problems in trying to establish that the gun was, in fact, a pellet gun. One of the likely ways of doing that would have required putting Lauria on the stand, which created a great amount of litigation risk and could have opened Lauria up to cross examination and potential perjury points if the jury did not find in his favor. Moreover, Mr. Braverman was concerned that even if there was proof of a plastic gun at one robbery, there was another robbery that lacked corroboration that the gun was plastic. And finally, by Mr. Braverman's calculation of the sentencing guidelines, the difference for Lauria pursuing this strategy at trial would have only marginally softened his guidelines range. Mr. Braverman seemed to be concerned about plea offers getting worse as the case dragged on and that it was in his client's best interest to take the deal that was in front of him. Nowhere in the record before the Court is there evidence that Mr. Braverman or Lauria were not aware of the allegation that a plastic gun was used at the robberies or that there was any law that precluded him from attempting to use such argument at trial—

particularly since his co-defendant used this exact strategy at trial. Accordingly, it can hardly be said that the Second Circuit's decision in *Lauria* created a new "fact" in that Petitioner learned that a pellet gun was not a firearm because this was a strategy that Lauria and his co-defendants had been floating for some time. As such, the Court finds that Lauria's claim is not timely under § 2255(f)(4).

### B. Proof of Actual Innocence

To prevail on a claim of actual innocence and toll the AEDPA, a petitioner must present credible and compelling new evidence that it would be more likely than not that no reasonable juror would have reasonable doubt about his guilt. *See Schlup v. Delo*, 513 U.S. 298, 327 (1995). The Supreme Court has noted that this is a "demanding" standard that is "seldom met." *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). To be "credible," a claim must contain "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. To be "compelling," a claim must be "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or[,] to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." *House v. Bell*, 547 U.S. 518, 538 (2006). The gateway should open only when a petition presents "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *McQuiggin*, 569 U.S. at 401 (quoting *Schlup*, 513 U.S. at 316.) The purpose of the inquiry "is to identify those cases in which a compelling showing of actual innocence would make it a manifest injustice to maintain conviction unless it was free of constitutional error." *Cosey v.*

*Lilley*, 460 F. Supp. 3d 346, 374 (S.D.N.Y. 2020), *aff'd*, 62 F.4th 74 (2d Cir. 2023) (quoting *Hyman v. Brown*, 927 F.3d 639, 658 (2d Cir. 2019).

Here, Petitioner claims that the new evidence in support of his actual innocence includes (1) that Petitioner newly understood that the jury instructions were wrong, (2) that Petitioner newly understood that he was actually and factually innocent, (3) that Petitioner newly understood that his attorney was ineffective, (4) affidavits from several of Petitioner's family members affirming that Petitioner owned and had access to a pellet gun, (5) notes from a witness that indicate he was not sure if the gun was real or not. The first three pieces of new evidence that Plaintiff proffers—though perhaps new to Petitioner—are not sufficient to establish actual innocence. They are not exculpatory pieces of evidence that were not presented at trial that show that Petitioner is actually innocent of the crime alleged. Moreover, the affidavits that Petitioner provides to the Court would have been available to Petitioner had he gone to trial. None of the affidavits indicate that the affiants had *newly* come forward to make themselves available to testify at trial or that Petitioner had otherwise *newly* learned of their existence. All of these witnesses and their statements would have been available to Lauria at trial. So too the notes from the witness that indicate that he was not sure that the gun was real or not. Lauria could have established this at his trial had he chose to exercise that right. None of these pieces of evidence qualify as new evidence because all of this information would have been available to Petitioner at trial just as it was to Lauria's co-defendant who proceeded to trial.

Petitioner does not flesh out an argument for how this evidence can be considered compelling but, in any event, the Court concludes that it is not. The affidavits that Petitioner provides to the Court only indicate that Petitioner owned and had access to a pellet gun. These affidavits in no way go to show that the pellet gun was used at the robberies instead of a real

firearm, which is the basis of Petitioner's entire claim. Moreover, the notes from the witness cannot be considered compelling evidence of actual innocence because that witness only saw the gun momentarily and there is no evidence of that witness being an expert in firearms or otherwise having any familiarity with weapons such that he can identify a real one from a plastic one. And even if he were, this would not establish actual innocence but only weaken the Government's case and strengthen Petitioners claim that the gun was not real. But this alone cannot be considered evidence of innocence so strong that a court cannot have confidence in the outcome of the trial as the standard calls for. *See McQuiggin*, 569 U.S. at 401. Accordingly, Petitioner has failed to meet the standard of actual innocence such that he can toll the AEDPA. As a result, Petitioner's claim is untimely.

### C. Ineffective Assistance of Counsel Claims

Petitioner has failed to toll § 2255(f)(4) and AEDPA's time limitations, and therefore, the Court need not reach Petitioner's ineffective assistance of counsel claims. But the Court will briefly say a word or two on it.

Petitioner attempts to argue that Mr. Braverman was ineffective for failing to research the prevailing law within the Second Circuit. The Braverman Declaration, however, clearly indicates that Braverman's concern was that even if he had pursued this at trial on Lauria's behalf that it would likely require Lauria to take the stand. This would open up Lauria to further legal exposure and cross examination. Moreover, establishing that a pellet gun was used at one robbery still left another robbery where there would be no affirmative proof that a pellet gun was used in that instance. This strategy would have left Lauria in a much more severe position post-trial if it failed to work. And by Mr. Braverman's estimation, the likelihood of that gamble was not worth the risk. As a result, he advised his client to take the plea deal before him because

things were going from bad to worse and would only continue to do so. This is a common tactic by defense lawyers as most cases never go to trial due to the harsh consequences on the other side of an unfavorable jury verdict. As the Braverman Declaration makes clear, after being advised of his options, Lauria made an informed choice to plead guilty.[1] And finally, Lauria's decision to not appeal was his own to make. Mr. Braverman may have indicated that he was not going to file his notice of appeal for Lauria on his behalf, but the Court made Lauria well aware of his ability to do so within 14 days at filing of the judgment. None of the bases that Lauria argues for Mr. Braverman's ineffective assistance reach the standard of objectively unreasonable.

## **CONCLUSION**

For the foregoing reasons, Lauria's Petition is DENIED. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 285 and to terminate the action.

Dated:   August 4, 2025                                    SO ORDERED:
        White Plains, New York

                                                                                                NELSON S. ROMÁN
                                                                                   United States District Judge

---

[1] Even if it were true that Mr. Braverman should have discovered the *Rosa* footnote where the Second Circuit explained that not all guns are firearms, it would not have changed (1) Braverman's advice to his client that he should accept the plea deal due to the proof problems in making this defense or (2) Lauria's option to plead or proceed to trial, which he was well aware of because Lauria pled guilty to all other charges besides the firearms charges and planned to litigate at trial under the theory that a pellet gun, and not a real gun, was used.